UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WENCESLAO AYALA,

          Petitioner,

    -vs-

DALE ARTUS, SUPERINTENDENT,

          Respondent.

**DECISION AND ORDER**

**No. 07-CV-0404T**

_____

## I.   Introduction

*Pro se* Petitioner Wenceslao Ayala ("Petitioner") has filed a
timely petition for a writ of habeas corpus under 28 U.S.C. § 2254
challenging the constitutionality of his custody pursuant to a
judgment entered January 23, 2004, in New York State, County Court,
Erie County, convicting him, after a jury trial, of Rape in the
First Degree (N.Y. Penal Law ("Penal Law") § 130.35 [1]), Sodomy in
the First Degree (Penal Law § 130.50 [1]), and Robbery in the Third
Degree (Penal Law § 160.05).

For the reasons stated below, habeas relief is denied and the
petition is dismissed.

## II.  Factual Background and Procedural History

On the evening of August 3, 1994, Sharlene Von ("Von" or "the
victim"), a/k/a Sharlene Miller, attended a baseball game with co-
workers.  Von left early to go to the movies with her husband.  As
Von walked toward the parking lot to her car, she noticed

Petitioner walking toward her.  Petitioner asked Von if she had a light for his cigarette.  She stated she did not, unlocked her car, and got inside.  Petitioner asked if he could use the lighter in her car.  When Von looked up, Petitioner was at her window.  He reached inside Von's window, unlocked her door, got in, and shoved her toward the passenger side.  Von tried to get to the passenger side door, but Petitioner grabbed her by the back of her neck and shoved her head between her knees.  Petitioner asked for Von's money.  Von heard Petitioner rifling through what she thought was her purse, although she could not see him.  Petitioner shoved Von onto the passenger side floor while she struggled against him screaming and crying.  Petitioner then started to drive her car. Von begged Petitioner to let her go, and Petitioner indicated that he would.  Shortly thereafter, Petitioner stopped the car, pulled Von up by the back of her shorts, and told her to get in the back seat.  Von told him no.  The two struggled face to face, but Petitioner succeeded in pushing her to the backseat.  When they were both in the backseat, Petitioner grabbed Von's head, put it between his knees, and sat on it.  Petitioner began taking Von's clothing off.  Von struggled to break free and reached for the window three times.  Each time, Petitioner pulled her back and punched her in the head.  Petitioner then instructed Von to take off her shorts and underwear and turn away from him, which she did. Petitioner then inserted his penis into her vagina and anus.

Petitioner then bound Von's hands and legs and took her wedding ring. Petitioner instructed Von not to look at him when he left, and that he would come back and hurt her if she did. After a short while, Von untied herself, put on her underpants and shoes, walked in the direction of the baseball game, and collapsed. An ambulance was called and Von was taken to Erie County Medical Center where she was questioned by police and rape kit samples were taken. Von described her attacker to police. An investigation was conducted, but Von was unable to positively identify a suspect. She initially identified a different individual by photo array, who was later excluded on the basis of DNA. The case went cold until July 2002. Trial Transcript [T.T.] 122-150.

In July 2002, the Erie County Central Police Services Forensic Laboratory ("Erie County Forensics Lab") learned that there was a match between a sample taken from Petitioner and evidence collected from the victim. A new DNA sample was taken from Petitioner, compared to the unknown sample in Von's case, and determined to be a match. T.T. 627-629, 632-633, 636, 641, 646-650.

Two Buffalo Police Department sex offense detectives spoke with Petitioner on January 8, 2003 at the Gowanda Correctional Facility, where he was incarcerated on an unrelated crime. The detectives told Petitioner that they were following up on a rape that occurred in Buffalo in August 1994. At the end of the

interview, detectives typed up a statement, which Petitioner read and signed.  T.T. 500-508.

Shortly thereafter, Petitioner was indicted for the rape, sodomy and robbery of Von.

Prior to the trial, a <u>Huntley</u> hearing was held, wherein the trial court determined that the statements Petitioner made to police were not involuntarily made and therefore admissible at trial.  A <u>Sandoval</u> hearing was also held, wherein the trial court determined that the People could question Petitioner about a 1995 conviction for rape and sodomy, if Petitioner testified at trial.

Also prior to trial, Petitioner filed a motion, pursuant to New York Criminal Procedural Law ("CPL") § 30.10, alleging unjustifiable delay in prosecuting the case.  The Erie County Court denied this motion, finding that the statute had been tolled, pursuant to CPL § 30.10(4)(a)(ii), because the identity and whereabouts of Petitioner were continuously unknown and unascertainable by the exercise of reasonable diligence during the period of time at issue.  <u>See</u> Memorandum, Decision and Order of the Erie County Court, Ind. No. 03-0008, dated 11/18/03.

A jury trial commenced in the Erie County Court on January 16, 2004 before the Honorable Timothy J. Drury.  Petitioner did not testify at trial.  On January 23, 2004, Petitioner was found guilty as charged.  On March 17, 2004, he was sentenced as a second violent felony offender to consecutive indeterminate terms of

twelve and one-half to twenty-five years for the rape charge, twelve and one-half to twenty-five years for the sodomy charge, and two and one-third to seven years for the robbery charge. Sentencing Minutes [S.M.] 37-38.

The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction. <u>People v. Ayala</u>, 27 A.D.3d 1087 (4th Dept. 2006). Leave to appeal was denied by the New York Court of Appeals. <u>People v. Ayala</u>, 6 N.Y.2d 892 (2006).

On November 7, 2006, Petitioner filed a CPL § 440.10 motion to vacate his judgment of conviction, which was denied by the Erie County Court on procedural grounds on May 2, 2007. <u>See</u> Decision of the Erie County Court, Ind. No. 00008-2003, dated 05/02/07. Petitioner appealed the denial to the Appellate Division, Fourth Department, which was denied on June 29, 2007. <u>See</u> Decision of the Appellate Division, Fourth Department, Ind. No. 00008-2003, dated 06/29/07.

This habeas petition[1] followed, wherein petitioner seeks relief on the following grounds: (1) Petitioner's statements were admitted into evidence in violation of <u>Miranda</u>; (2) ineffective

---

[1]     Petitioner filed an Amended Petition on October 18, 2007, seeking to raise an additional ineffective assistance of counsel claim. <u>See</u> Amended Petition (Dkt. #12). Because Petitioner did not properly move for leave to amend the petition, as required by Fed. R. Civ. P. 15(a), this Court (Honorable Richard J. Arcara) construed the Amended Petition as a Motion for Leave to File an Amended Petition and denied said motion on July 23, 2008. <u>See</u> Decision and Order of the U.S. District Court, Western District of New York, dated 07/23/08 (Dkt. #13). Accordingly, the original petition filed on June 25, 2007 is the operative petition, and all references herein are made to the June 25, 2007 petition.

assistance of trial counsel; (3) the trial court's <u>Sandoval</u> ruling was in error and prevented Petitioner from testifying at trial; (4) the sentence was unduly harsh and excessive; and (5) Petitioner's indictment and conviction should have been barred by the statute of limitations. Petition [Pet.] ¶22A-D (Dkt. #1); Supplemental Memorandum of Law in Support of Petition for Writ of Habeas Corpus [Supp. Memo.] (Dkt. #10).

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as

determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see

<u>also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (<i>en banc</i>), <u>cert. denied</u>, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Id.</u> (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

**IV.  Petitioner's Claims**

**1.    Erroneous <u>Sandoval</u> Ruling**

In ground three of the petition, Petitioner claims that the trial court erred when it ruled, at a pre-trial <u>Sandoval</u> hearing, that Petitioner, should he testify at trial, could be cross-examined concerning a prior conviction for rape and sodomy. Petitioner contends that the ruling precluded him from testifying at trial, thereby depriving him of his due process right to a fair trial.  Pet. ¶ 22C.  This claim does not present an issue that is cognizable on habeas review.

"It is well settled that a [habeas] petitioner's failure to testify [at trial] is fatal to any claims of constitutional deprivation arising out of a <u>Sandoval</u> type ruling because, in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of the claim."  <u>Peterson v. LeFevre</u>, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), <u>aff'd mem.</u>, 940

F.2d 649 (2d Cir. 1991); see Luce v. United States, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.").

This means that habeas relief is not warranted if the petitioner decided not to testify, regardless of the fact that the trial court's Sandoval ruling may have motivated petitioner's decision. See McKenzie v. Poole, 03-CV-4253, 2004 U.S. Dist. LEXIS 23598, at *15 (E.D.N.Y. Nov. 23, 2004); see also Goston v. Rivera, 462 F.Supp.2d 383, 390 (W.D.N.Y Nov. 26, 2006) (finding that Petitioner's Sandoval claim did not raise constitutional issue cognizable on habeas review where Petitioner did not testify at trial); Oslan v. Parrott, 01 Civ. 6551, 2004 U.S. Dist. LEXIS 11681, at *6-*7 (S.D.N.Y. June 22, 2004) ("Petitioner chose not to testify at trial. Therefore, petitioner's claim based on the trial court's Sandoval ruling does not raise a constitutional issue cognizable on habeas corpus review."); Delgado v. Duncan, 02 Civ. 4929, 2003 U.S. Dist. LEXIS 24123, at *12 (E.D.N.Y. Nov. 13, 2003) ("Because petitioner did not testify at trial, this claim [regarding the Sandoval ruling] is not cognizable on habeas review."). Here, Petitioner elected not to testify at trial and, thus, his Sandoval claim cannot provide a basis for habeas relief. The claim is dismissed.

2.  **Miranda** Violation

In ground one of the petition, Petitioner asserts that his statements were admitted into evidence in violation of Miranda v. Arizona.[2]  He argues, *inter alia*, that he was subjected to custodial interrogation when he was interviewed by police at the Gowanda Correctional Facility, and, therefore, should have been administered Miranda warnings.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.[3]  Ayala, 27 A.D.3d at 1088.

After a pre-trial hearing on the matter, the suppression court determined, in relevant part, that Petitioner's statements were admissible because Miranda warnings were not required since the police questioning was non-custodial.  See Memorandum, Decision and Order of the Erie County Court, Ind. No. 03-0008, dated 11/20/03, 4.  The suppression court based this determination on the following findings of fact: that on January 8, 2003, two Buffalo Police Detectives traveled to the Gowanda Correctional Facility, where Petitioner was incarcerated for a different offense, to speak with

---

[2]      Miranda v. Arizona, 384 U.S. 436 (1966).

[3]      The Appellate Division held that: "[c]ontrary to the contention of defendant, County Court did not err in denying his motion to suppress a statement he made to police investigators on the ground that Miranda warnings were not administered and waived by defendant before he made the statement. Although defendant was confined in prison for a different offense at the time he made the statement, the court properly determined that Miranda warnings were not required inasmuch as the questioning of defendant was not in a custodial setting.  Furthermore, we perceive no reason on the record before us to disturb the court's determination that defendant spoke willingly with the investigators."  Ayala, 27 A.D.3d at 1088.

Petitioner about a rape that occurred in Buffalo in 1994; that the detectives conducted their interview of Petitioner in a small room off of a cafeteria; that Petitioner was brought to the interview room by a corrections officer and left there; that he sat down; that he was not handcuffed or restrained in any way; that the police identified themselves and stated they were investigating a rape that occurred in Buffalo in 1994; that Petitioner was initially interested in what the police had to say; that he was told by the detectives that he could leave and did not have to speak to them; that he agreed to give the detectives a sworn statement; that Petitioner never requested to speak to a lawyer; that Petitioner was not threatened in any way or promised anything; that he was told again that he was free to leave the room if he wished; that he asked detectives when the crime occured; that while one of the detectives was searching the file for the date, Petitioner said he wanted to leave, but then continued to give his statement; that, after the statement was finished, a copy was printed and Petitioner read and signed the statement; that Petitioner shook hands with the detectives, and then left the room. See id.

These findings of fact are presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e) ("a determination of a factual issue by a State court shall be presumed to be correct" and "the [petitioner] shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence").

Petitioner does not explicitly contest the factual findings of the trial court. Supp. Memo., 20. Rather, he contests the trial court's determination, as affirmed by the Appellate Division, that he was not in custody at the time he made the statements, and therefore, was not entitled to Miranda warnings. Id. He argues that although he was not physically constrained at the time of the interview, he was incarcerated and the rules of the correctional facility prohibited him from getting up and leaving the interview room. Id. at 21. The Court rejects this contention.

The rationale for the warnings mandated by Miranda v. Arizona is that in-custody interrogation places "inherently compelling pressures" on an individual; therefore, the interview must be preceded by advice to the subject regarding his legal rights, including the right to remain silent and the right to counsel. Miranda, 384 U.S. at 444. Conversely, Miranda warnings are not required unless the person being questioned is deemed to be "in custody." See Stansbury v. California, 511 U.S. 318, 322 (1994); Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "[T]he mere fact of imprisonment does not mean that all of a prisoner's conversations are official interrogations that must be preceded by Miranda warnings." United States v. Willoughby, 860 F.2d 15, 23 (2d Cir. 1988). Instead, the issue is "whether a given curtailment of

freedom of action exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 437 (1984)). In the Second Circuit, the standard for determining whether custody exists in cases in which the individual being interrogated is incarcerated was further explicated in United States v. Morales, 834 F.2d 35 (2d Cir. 1987). See United States v. Newton, 369 F.3d 659, 670-71 (2d Cir. 2004); Georgison v. Donelli, No. 04 Civ. 1444, 2005 U.S. Dist. LEXIS 11363, at *5 (S.D.N.Y. June 9, 2005). Morales holds that custody exists when: (1) the questioning was conducted in a "custodial setting" with "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak," and (2) the questioning was conducted by officers "who are aware of the potentially incriminatory nature of the disclosures sought." Morales, 834 F.2d at 38; accord United States v. Rodriguez, 356 F.3d 254, 259 (2d Cir. 2004). "Only questioning that reflects a measure of compulsion above and beyond that inherent in custody itself constitutes interrogation the fruits of which may be received in evidence only after Miranda warnings have been given." Id.; see also Willoughby, 860 F.2d at 23.

Here, Petitioner argues that because the questioning took place in a correctional facility and the rules of the facility

prevented him from leaving, <u>Miranda</u> warnings were necessary at the time of his interview with the two detectives. However, as discussed above, whether Petitioner's questioning warranted <u>Miranda</u> warnings depends not on his presence in the correctional facility, but on the specific circumstances of his interview. Here, there is no evidence that there were restrictions on his freedom beyond those placed on any prisoner, and with which he had already been living for some time. <u>See</u> <u>Willoughby</u>, 860 F.2d at 23 (even though defendant was a prisoner there was no "compulsion above and beyond [] confinement" that required him to speak). Petitioner was not questioned in his cell; he was questioned in a small room off of a cafeteria and was not handcuffed, shackled, or restrained in any way. Petitioner was not forced to answer any questions. In fact, the record reflects that Petitioner was initially interested in what the police had to say, that he willingly provided information to them regarding his whereabouts at the time of the crime, and that he was told on more than one occasion that he was free to leave. <u>See</u> <u>Georgison</u>, 2005 U.S. Dist. LEXIS 11363, at *5 (finding no custody because "petitioner was questioned in the visitor's room of the prison and was not restrained in any way"); <u>United States v. Freeman</u>, No. 04-M-4078, 2005 U.S. Dist. LEXIS 28386, at *3-4 (W.D.N.Y. Nov. 10, 2005) (no custody where suspect was not handcuffed, was questioned in an unlocked room, and was not forced to answer questions); <u>see</u> <u>also</u> <u>Tankleff v. Senkowski</u>, 135 F.3d

235, 243-44 (2d Cir. 1998)(discussing importance of whether defendant was free to leave interview).  Accordingly, the Court finds Petitioner was not in custody for <u>Miranda</u> purposes.

The trial court's decision to allow statements obtained by Petitioner during the January 8, 2003 interview at the Gowanda Correctional Facility to be admitted at trial was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Habeas relief is not available to Petitioner and the claim is dismissed.

### 3.  Ineffective Assistance of Trial Counsel at Sentencing

In ground two of the petition, Petitioner asserts that he was deprived of his Sixth Amendment right to the effective assistance of counsel because trial counsel took an "adverse" position to his *pro se* challenge to the People's statement at sentencing that Petitioner was a second felony offender.  Pet. ¶22B.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.  The Appellate Division found that "[Petitioner] received meaningful representation." <u>Ayala</u>, 27 A.D.3d at 1088.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is

demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690. The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of <u>Strickland</u>, and that, but for the deficiency, the result of his trial would likely have been different.

Here, the record reflects that the People filed a statement pursuant to CPL § 400.15 requesting that Petitioner be sentenced as a second violent felony offender based upon his prior conviction in Bush County, Pennsylvania in 1983 for the crime of Rape and Terroristic Threats. S.M. 2. In opposition, Petitioner submitted a *pro se* statement, which was presented to the sentencing court by Petitioner's attorney. At the time counsel presented this statement, he indicated the following: (1) that he had reviewed the matter with Petitioner; (2) that he had previously represented

Petitioner in 1995; and (3) that, at Petitioner's 1995 sentencing, a determination had been made that the Pennsylvania conviction from 1983 qualified for treatment under New York's second violent felony offender status for sentencing purposes. S.M. 3-5. Counsel further stated that, based on this previous determination, it was his understanding that the Petitioner could not now relitigate the issue, and therefore, saw no "credible challenge" to the prosecution's assertion. S.M. 6. The Court cannot find that, under these circumstances, the position counsel took and/or his decision not to pursue the matter further was unreasonable. CPL § 400.15[8] provides that, "where a finding has been entered pursuant to [CPL § 400.15], such finding shall be binding upon that defendant in any future proceedings in which the issue may arise." CPL §400.15[8]. Here, the Honorable Joseph S. Forma, Erie County Supreme Court, had entered such a finding against Petitioner in 1995 regarding the 1983 judgment in Pennsylvania. S.M. 4. Thus, it would have been futile for counsel to have challenged the prosecution's assertion that Petitioner should be sentenced as a second violent felony offender.

Furthermore, the record reflects that there is no reasonable probability that the outcome of the trial would have been different but for counsel's alleged errors. The record establishes that the trial court accepted the binding nature of the prior finding and rejected Petitioner's challenge for reasons unrelated to trial

counsel's representations, namely that the allegations in the CPL § 400.15 notice were uncontroverted and thus deemed to have been admitted by Petitioner.  S.M. 7.

Therefore, the Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of <u>Strickland</u>.  The claim is dismissed.

## 4.   Harsh and Excessive Sentence

In ground four of the petition, Petitioner contends that the sentence imposed was unduly harsh and excessive.  In particular, he asserts that "[t]he sentences should have been ordered [sic] to run concurrently," rather than consecutively.  Pet. ¶22D.  Petitioner's claim is not cognizable on habeas review.

It is well-settled law that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range.  <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing <u>Underwood v. Kelly</u>, 692 F.Supp 146 (E.D.N.Y. 1988), <u>aff' mem.</u>, 875 F.2d 857 (2d Cir. 1989)); <u>accord</u> <u>Ross v. Gavin</u>, 101 F.3d

687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced as a second violent felony offender to consecutive indeterminate terms of twelve and one-half to twenty-five years for the rape charge, twelve and one-half to twenty-five years for the sodomy charge, and two and one-third to seven years for the robbery charge. These terms are within the ranges prescribed by New York law for a second violent felony offender convicted of two class B violent felonies and one Class D felony. <u>See</u> Penal Law §§ 70.00, 70.04, 70.25.

Accordingly, habeas relief is not available to Petitioner, and the claim is dismissed.

## 5.  Ineffective Assistance of Trial Counsel for Failure to Raise Statute of Limitations as a Defense

Petitioner argues that counsel was ineffective for failing to investigate and raise the statute of limitations as a defense.[4]

---

[4]     In a separate, but related claim, Petitioner also contends that he was deprived of "due process of law" when "he was tried and convicted after the statute of limitations had expired in violation of Criminal Procedure Law § 30.10(2)(b)." Pet. ¶22, Additional Grounds. Although Petitioner characterizes this claim as a constitutional violation, his supporting memorandum frames this claim as a violation of state law, namely that the trial court erred in denying his CPL § 30.10 motion. In particular, he argues that the trial court misapplied or misinterpreted the tolling provisions of CPL § 30.10 in denying his motion. Such a claim is a matter of state law that is generally not cognizable on habeas review. <u>See</u> 28 U.S.C. § 2254(a) (federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas  review, a federal court is limited to deciding whether a conviction

-20-

Pet. ¶22, Additional Grounds. This claim was raised in Petitioner's CPL § 440.10 motion, denied on state procedural grounds, and, consequently, is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on CPL § 440.10(2)(a)[5] to deny Petitioner's claims because the issues had already been raised and determined on the merits on direct appeal. Denial of a claim pursuant CPL § 440.10(2)(a) has been found to constitute an adequate and independent state ground. See, e.g., McClarin v. Smith, 2007 U.S. Dist. LEXIS 58717 (E.D.N.Y. 2007) (finding that due process claim procedurally barred by New York Criminal Procedure Law § 440.10(2)(a) because it had been adjudicated on the merits during petitioner's direct appeal); D'Alessandro v. Fischer, 2005 U.S. Dist. LEXIS 31381 (S.D.N.Y. 2005) (finding that the trial court's express reliance on CPL § 440.10(2)(a) indicates that the court rejected Petitioner's

---

violated the Constitution, laws, or treaties of the United States."). Accordingly, the claim is dismissed.

[5]    CPL § 440.10(2)(a) provides that, "the court must deny a motion to vacate a judgment when the grounds or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment . . . ."

ineffective assistance claim on an independent and adequate state procedural ground precluding federal habeas review).

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." <u>Coleman</u>, 501 U.S. at 749-50 (internal citations omitted); <u>accord, e.g.</u>, <u>Fama v. Commissioner of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000). Petitioner has made no showing of the requisite cause or prejudice necessary to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, habeas relief is unavailable to Petitioner, and the claim is dismissed.

**6. Ineffective Assistance of Counsel - Failure to Move to Dismiss DNA Evidence**

Petitioner alleges ineffective assistance of trial counsel based on, *inter alia*, counsel's failure to move to dismiss DNA evidence connecting him to the crime. Pet. ¶22, Additional Grounds. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division found that, "the record establishes that defendant agreed to provide a DNA sample, and thus it cannot be said that he was denied effective assistance of counsel by defense counsel's failure to move to suppress the

resulting DNA evidence against him for lack of probable cause to order the test." <u>Ayala</u>, 27 A.D.3d at 1089.

Petitioner is unable to meet either prong of the <u>Strickland</u> test, as set forth above. "For purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation." <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987) (citing <u>United States v. Afflerbach</u>, 754 F.2d 866, 870 (10th Cir.), <u>cert. denied</u>, 472 U.S. 1029, 87 L. Ed. 2d 636, 105 S. Ct. 3506 (1985)). "Counsel certainly is not required to engage in the filing of futile or frivolous motions." <u>Id.</u> (citing <u>Murray v. Maggio</u>, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam). Here, Petitioner cannot show, given the facts and circumstances of the case, that counsel's failure to move to exclude/suppress Petitioner's DNA evidence was unreasonable. The record reflects that Petitioner was convicted in 1995 for rape and sodomy, and was sentenced to an indeterminate term of 10 to 20 years imprisonment. While incarcerated, he was required to provide a biological sample to the Convicted Offender DNA Databank pursuant to Executive Law § 995(7). This sample was received and entered into the State DNA Databank. In July of 2002, the Erie County Forensics Lab initiated a search that resulted in a match between Petitioner's DNA and the DNA sample recovered from Von. Subsequently, the People moved by Order to Show Cause for a biological sample from Petitioner that could be locally tested for

DNA comparison with the samples taken from Von. Petitioner voluntarily gave law enforcement a sample. See Motion Transcript of 02/05/03, 2-3. Based on these facts, there were no legal grounds upon which to move to exclude the DNA evidence –- either the initial sample and/or the sample taken pursuant to the Order to Show Cause. If counsel had moved to exclude this evidence, it is likely such a motion would have been unsuccessful. Where there has been no error on the part of trial counsel, the outcome of the proceeding cannot have been affected.

Accordingly, the Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of settled Supreme Court law. The claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    April 12, 2010
             Rochester, New York